*926 OPINION OF THE COURT
Joseph Capella, J.
The respondent seeks dismissal (CPLR 3211 [a]; 3212) of the instant nonprimary residence holdover proceeding on the premise that the predicate nonrenewal of lease {Golub) notice relied upon by the petitioner is stale. In opposition, the petitioner cross-moves to strike the respondent’s first through sixth and ninth affirmative defenses, and for an order granting discovery and use and occupancy. The Golub notice is dated January 19, 2006 and states, inter alia, an intent by the petitioner not to renew the parties’ lease agreement due to expire on April 30, 2006 based on the petitioner’s belief that the respondent does not occupy the subject apartment as his primary residence. Some 20 months later the petitioner commenced the instant proceeding predicated upon this very Golub notice.
According to the respondent, the petitioner failed to commence this proceeding within a reasonable amount of time after service of the Golub notice, and given the lapse of some 20 months, the Golub notice has become stale and ineffective. (Goldstein v Simensky, NYLJ, Jan. 13, 1989, at 21, col 2 [App Term, 1st Dept]; South Shore Estates, Inc. v Olsen, NYLJ, Mar. 14, 2001, at 20, col 3 [Civ Ct, NY County 2001]; Mau v Stapleton, 136 Misc 2d 793 [Civ Ct, Kings County 1987]; Shaw v Castiglioni-Spalten, NYLJ, May 14, 2003, at 21, col 6 [Civ Ct, NY County 1987].) On the other hand, the petitioner alleges that the delay in commencing this proceeding was due to financial difficulties she incurred as a result of various litigation and repair costs associated with the subject building. For example, the petitioner states that before service of the Golub notice, she commenced two nonpayment proceedings against the petitioner, one in February 2005 and another in November 2005. The November 2005 nonpayment proceeding resulted in a stipulation of settlement dated April 5, 2006 which specifically provides that it was without prejudice to the petitioner’s Golub notice. In addition, the petitioner states that “in an effort to cut down [her] costs, [she] intended to switch from [her current counsel] to a less expensive law firm to prosecute [this nonprimary residence proceeding] on [her] behalf.” In the interim, and further delaying this proceeding, the petitioner alleges that she “was using [her] time and resources to address repair priorities in the Building [sic], which compelled [her] to endure further financial difficulty . . . [I]t was not until recently that *927 [she] was able to muster up the financial wherewithal to prosecute this proceeding.” The petitioner did not change attorneys, and has not billed or accepted rent from the respondent since April 2006.
Although all of the cases relied upon by the respondent address the issue of stale and ineffective predicate notices, three of the four cases involved situations in which a landlord sought to reuse a predicate notice from a prior proceeding. In Goldstein (NYLJ, Jan. 13, 1989), the Appellate Term, First Department, held that a March 1985 predicate notice served in a prior discontinued proceeding was stale and ineffective for a proceeding commenced over two years later in August 1987. In South Shore (NYLJ, Mar. 14, 2001), the court held that a landlord could not rely on the 1995 Golub notice from a prior abandoned proceeding to support a subsequent proceeding commenced in 2000. In Mau (136 Misc 2d 793 [1987]), the court held that a nine-month-old predicate notice (i.e., New York City Housing Authority written authorization) from a prior dismissed proceeding is not valid for the purposes of a new proceeding. In the fourth case of Shaw (NYLJ, May 14, 2003), a Golub notice was found stale and ineffective as a predicate for a proceeding commenced more than 18 years later.
Actually, the first reported case on this issue was in 1973, entitled Haberman v Wager (73 Misc 2d 732 [Civ Ct, NY County 1973]), in which Judge Irving Younger wrote that the function of a predicate notice is twofold: to end the tenant’s estate and inform him/her of the consequence associated with not vacating. In Haberman, the landlord attempted to reuse a three-month-old 30-day predicate notice from a prior dismissed proceeding. According to Judge Younger,
“[b]ecause of the latter feature, I take it that the Legislature did not intend a [predicate] notice to be good forever. If a landlord does not proceed with reasonable diligence, the notice will at some point— whatever the period be — lose its force, and the tenant reverts to his prior status. The landlord’s inaction, in short, will be deemed a waiver of the [predicate] notice” (at 733 [emphasis added]).
Of course, Goldstein, South Shore, Mau and Haberman all involved the reuse of a predicate notice from a prior proceeding, which is not the case here. And in Shaw, where there was no prior proceeding, the predicate notice was extremely old, 18 years to be exact. In 1975, in the case of Arol Dev. Corp. v Goodie *928 Brand Packing Corp. (84 Misc 2d 493, 495-496 [1975]), the Appellate Term, First Department, permitted the reuse of a two-month-old predicate notice where, inter alia, the “second proceeding was brought promptly and within a reasonable time” (emphasis added) after the predicate notice was served. Neither the parties’ attorneys, nor the court, was able to find a published decision more directly on point to the facts at hand; however, the aforementioned decisions do provide some guidance.
A rent-stabilized tenant is entitled to a renewal lease at the expiration of the lease term unless the landlord elects not to renew on the ground that the subject apartment is not being utilized as a primary residence. (9 NYCRR 2524.1 [a]; 2524.4 [c].) The landlord must serve a Golub notice notifying the tenant of the landlord’s intent not to renew the lease within a “window period” of not more than 150 days nor fewer than 90 days prior to the lease expiration. (Golub v Frank, 65 NY2d 900 [1985].) Failure to serve a Golub notice within the “window period” forecloses the commencement of a nonprimary residence proceeding, thereby requiring the landlord to wait until the next “window period.” (Berkeley Assoc. Co. v Camlakides, 173 AD2d 193 [1st Dept 1991], affd 78 NY2d 1098 [1991). Rent Stabilization Code (9 NYCRR) § 2524.2 (c) (2) and § 2524.4 (c) are silent as to when, if ever, a Golub notice becomes stale, or how long after service of same must a proceeding be commenced. Looking elsewhere, but recognizing that they pertain to situations in which an action has already been commenced, and, therefore, are not directly on point, some additional guidance is available from the Civil Practice Law and Rules and the Uniform Civil Rules for the New York City Civil Court. For example, a year after issue is joined, the CPLR permits a court to dismiss an action where it finds that the plaintiff has unreasonably delayed prosecuting same (CPLR 3216). In addition, the Uniform Rules provide that an action stricken from the calendar may be restored to the calendar by motion made within one year (22 NYCRR 208.14 [c]). Keeping in mind the nature of a summary proceeding, it would be fair to say that a nonprimary residence holdover proceeding should be commenced promptly and within a reasonable time after service of a Golub notice. And given the previously discussed case law and statutes, it would also be fair to say that a two-month delay is reasonable (Arol Dev. Corp. v Goodie Brand Packing Corp., 84 Misc 2d 493 [1975]), whereas nine months (Mau v Stapleton, 136 Misc 2d 793 [1987]) to a year (CPLR 3216; 22 NYCRR 208.14 [c]) is not.
*929 The earliest the petitioner could have commenced this proceeding is May 1, 2006, but, instead, the petitioner commenced this proceeding 16 months later (i.e., Aug. 15, 2007). There were no ongoing settlement negotiations, nor was there a collateral proceeding/action that precluded commencement. After a reasonable opportunity for the petitioner to commence this proceeding, the respondent should be freed from the burden of preparing to defend same. The Golub notice should not “hang like the sword of Damocles over the head of the tenant, to be used at some future date, at the whim of the landlord.” (Colavolpe v Williams, 77 Misc 2d 430, 431 [Civ Ct, Kings County 1974].) Furthermore, this court is not persuaded by the petitioner’s allegation that the delay in commencing this proceeding was due to financial difficulties incurred as a result of litigation and repair costs associated with her being the owner of the subject building. To the extent that there is some merit to the petitioner’s allegation that the respondent does not primarily reside at the subject apartment, there is nothing to preclude the commencement of a similar proceeding at a later date. Of course, a new nonprimary residence proceeding will have to wait until the next “window period.” But the fact remains that any further delay is a direct result of the petitioner’s own inaction here. This in no way is intended to encourage a tenant to reside elsewhere, but to discourage an owner from unreasonably sitting on a Golub notice, to be used at some future date, at his/her whim. Moreover, this is an exceptional issue because, for obvious reasons, it is very rare that a proceeding of merit is not diligently prosecuted.
Based on the aforementioned, the respondent’s motion for dismissal is granted, and the petitioner’s cross motion is denied as moot.