OPINION OF THE COURT
George M. Heymann, J.
Is there life after “death” for a predicate Golub notice?[1]
Factual Background
The petitioner owner commenced these holdover proceedings seeking to recover the premises for her own use and occupancy as her primary residence.
The respondents herein are tenants of rent-stabilized apartments located at 309 Stockholm Street, Brooklyn, New York 11237, apartments 3L and 3R, respectively. Their lease terms commenced on December 1, 2008 and ended on November 30, 2010.
A “Notice of Intention to Terminate Tenancy and Not to Renew Lease and Intention to Commence an Action or Proceeding” (Golub notice), dated August 3, 2010, was mailed to the respondents by regular and certified mail on August 4, 2010.
The instant owner-use holdover proceedings were commenced by the filing of. the petition on December 15, 2010. Service was also made on New York City Housing Authority (NYCHA) Section 8 Program.
Prior to the commencement of these proceedings, the petitioner utilized the same notices of nonrenewal and termination of tenancy for identical proceedings (L & T Nos. 104467/10, 104468/0, respectively) which were initiated on December 3, 2010 and scheduled to appear on the calendar on December 14, 2010.
On December 14, 2010, the respondents moved to dismiss the initial proceedings because the respondents are Section 8 voucher recipients and the administrative agency, NYCHA, was not properly served.
As a result, the parties entered in a two-attorney stipulation as to each matter agreeing that “[t]he above proceeding is *465 discontinued without prejudice, because of the respondent’s motion.”
That same day, the petitioner prepared a new petition and notice of petition for each matter and filed them with the court the next day, December 15, 2010, which were then served upon the respondents on December 17, 2010.
On January 14, 2011, the respondents moved to dismiss these proceedings on the grounds that the petitioner did not serve new notices of nonrenewal (Golub notices) and that the petitioner failed to file completed affidavits of service of the petition and notice of petition with the court clerk.
On March 1, 2011, these two matters, which were pending in different parts, were consolidated in this court’s part and adjourned to March 4, 2011 for argument.
Discussion and Conclusions of Law
In support of their motions to dismiss, the respondents rely on the holdings in Matter of Nicolaides v State of New York Div. of Hous. & Community Renewal (231 AD2d 723 [2d Dept 1996]) and Kaycee W. 113th St. Corp. v Diakoff (160 AD2d 573 [1st Dept 1990]).
In Nicolaides (supra), the court held that a notice of nonrenewal of a rent-stabilized lease does not survive the dismissal of the first action (in the Civil Court) and cannot serve as the predicate notice for a second proceeding in a new forum (Supreme Court), citing Kaycee.
In Kaycee (supra), the Civil Court proceeding was “eventually dismissed” and the landlord commenced a second proceeding using the same 30-day notice in Supreme Court. The second proceeding was dismissed because the same predicate notice, which was “deficient” and “ineffective to serve as a predicate for an eviction proceeding” was utilized (id. at 574). In dismissing the action the court did so “without prejudice to the landlord’s commencement of a new proceeding [after] a new and proper 30 day notice.” (Id. [emphasis added].)
The respondents also cited Fileccia v Neuwirth (NYLJ, June 16, 2010, at 25, col 1), where the landlord sought to maintain a second identical proceeding based upon the same predicate notice while the first proceeding was still pending. There, the first proceeding was adjourned repeatedly, requiring numerous appearances by the respondent and counsel. The court held that
*466 “[t]he crux of this line of cases is that when the earlier proceeding is terminated and ended, whether as a result of dismissal, discontinuance or abandonment, the entire matter is terminated, including the predicate notice for that proceeding, and given the vitiation of the predicate notice it cannot be revived and is therefore ineffective to serve as a predicate . for a subsequent eviction proceeding.”
However, the court distinguished its case by pointing out the initial proceeding was never dismissed, discontinued, sought to be discontinued, or abandoned and was still pending 14 months after it was commenced, and the second proceeding, using the same predicate notice, was commenced nine months after the petitioner was notified of the challenge to service in the first proceeding.
The Fileccia court discussed the matter of Chen v Brito (NYLJ, Apr. 9, 2003, at 24, col 6), as does the respondent herein. In Chen, an owner-use holdover proceeding, the respondent moved to dismiss the petition based on defects in service of the petition, and there was motion practice and adjournments from November 12, 2002 through January 14, 2003. The petitioner commenced a second owner-use holdover proceeding seeking the identical relief on December 11, 2002 “during the active litigation and motion practice in the prior proceeding.” Both matters appeared on the calendar on January 14, 2003 and the
“petitioner discontinued the prior ‘owner’s-use’ holdover by stipulation, which stipulation reserved respondent’s defense that petitioner was barred from commencing a new ‘owner’s-use’ holdover proceeding based upon the same predicate notice of lease nonrenewal as used in the prior holdover.”
In that case, under those circumstances, the court held that “a party cannot manipulate the proceedings to insulate itself from the prevailing law.”
In furtherance of their position, the respondents cite Malafis v Evans (NYLJ, July 5, 2000, at 34, col 2), which supports the position that a previously vitiated Golub notice cannot be used as a predicate notice in a subsequent proceeding. In reaching its conclusion, the court relied on Nicolaides (supra), which had cited Cacaj v Levine (NYLJ, July 3, 1991, at 25, col 4), where the proceeding used a prior Golub notice subsequent to the dismissal of the initial owner-use holdover proceeding, after a traverse hearing for lack of jurisdiction. The court also relied on *467 Mau v Stapleton (136 Misc 2d 793 [1987]), which dismissed a second owner-use holdover proceeding involving a Section 8 tenant where the petitioner failed to obtain a new authorization from NYCHA when the first proceeding was dismissed on technical grounds. The basis for dismissal was “that circumstances might have changed and that the grounds on which the authorization had been secured eleven months before might have become stale.” In Malafis (supra), there was a lapse of over two years since the notice of nonrenewal had been served, and the court was concerned that the circumstances might have changed. The court further noted that the “proceeding [was] based on the alleged housing needs for petitioners’ son, yet the moving papers [were] completely silent on the issue.”
The respondents further rely on Wilczewski v Mercado (NYLJ, May 15, 1996, at 28, col 2) and West 38th St. Garage Inc. v Wehbe (NYLJ, Dec. 24, 1994, at 25, col 4), in support of their position.
In Wilczewski (supra), there is no recitation of the factual scenario between the first and second owner-use proceedings other than the use of the same Golub notice in the second proceeding after dismissal of the first proceeding for improper service.
In West 38th St. Garage Inc. (supra), where several days elapsed between the proceedings, the court held that “once the initial proceeding ends a bright-line rule applies, mandating that a new notice of termination be served on the tenant” citing two cases in which there was a 15-day lapse and a two-month lapse, respectively, between the first and second proceedings requiring a new notice. The court then stated “[b]ut see, Dicara v Cecere, NYLJ, 4/18/78, p.13, col. 5 [AT 2] (Notice from the first proceeding sufficient where lapse between proceedings was one day).”
The petitioner maintains that under the specific facts of this case, use of the same Golub notice served upon the respondents prior to commencement of the initial owner-use proceeding is not a ground for dismissal of the instant proceedings.
In Center for Behavioral Health Servs., Inc. v Bock (18 Misc 3d 1111[A], 2008 NY Slip Op 50007[U], *5 [2008]), this court stated that
“[w]hile it may be the general rule that predicate notices from one holdover proceeding may not be used in a subsequent holdover proceeding that is commenced after the termination, dismissal or discontinuance of the former proceeding, it is the tim *468 ing of the commencement of the second proceeding that becomes the crucial factor to be considered.”[2]
In the case at bar, the court is faced with the enforcement of a “bright-line” rule without exception, as argued by the respondents (see West 38th St. Garage Inc. v Wehbe, supra), or giving consideration to the fact-specific circumstances that led to the dismissal of the first owner-use holdover proceeding and the commencement of the second identical proceeding using the same predicate notice, as averred by the petitioner.
Notwithstanding the holdings in Nicolaides (supra) and Kaycee (supra), this court finds that as a result of the basis for the dismissal of the initial proceedings, the stipulation entered into between the parties, the timing of the commencement of the subsequent proceedings, and the lack of prejudice to the respondents, dismissal of the instant proceedings is not warranted.
Here, the initial owner-use proceedings were dismissed on the very first day the matters appeared on the calendar (December 14, 2010), based on the respondents’ motions to dismiss for failure to serve a copy of the petitions and notices of petition upon Section 8. On the very same day, a new, identical petition was prepared by counsel and filed with the court the next day. The respondents were served two days later.
There has been no allegation that the Golub notices contained any defects that would have resulted in dismissal in either proceeding (see Kaycee, supra); that the respondents were not fully apprised of the nature of the proceedings sufficient to prepare a defense; that the respondents were in any way prejudiced by the one-day lapse in proceedings; or that there was any change in circumstances between December 14, 2010 and December 15, 2010 (see Malafis, supra). Nor had there been extensive litigation of the first proceeding before commencing *469 the second proceeding or manipulation by the petitioner in commencing the second proceeding (see Chen, supra).
The adage “timing is everything” is apropos in this case.
Nicolaides (supra) and Kaycee (supra) make no reference to the elapsed time frames between proceedings, while Chen (supra) notes the “active litigation” of the first proceeding before dismissal. Similarly, in Fileccia (supra), the first proceeding had been “adjourned repeatedly, requiring numerous court appearances.” In Mau (supra) there was an 11-month hiatus, and a two-year lapse in. Malafis (supra). In Fileccia (supra), the second proceeding was not commenced until some 14 months after the original, and only notice of nonrenewal was served, and some nine months after the petitioner was notified of the challenge to service in the first proceeding.
As a direct result of the respondents’ motions to dismiss, the attorneys stipulated to discontinue the initial proceedings “without prejudice.” When the court inquired of respondents’ counsel, during oral argument, what was intended by that phrase, counsel indicated that petitioner would not be precluded from commencing new proceedings on the same or similar grounds, but only at the expiration of newly tendered and accepted one- or two-year renewal leases. Thus, the words “without prejudice” were superfluous, and of no import, since, as counsel conceded, they had the same meaning as “with prejudice” as far as she was concerned. (But see Malafis, supra [where the court rejected the argument that by refusing to allow the re-use of a Golub notice where dismissal is “without prejudice” the court explicitly turned it “into a dismissal with prejudice”].)
As previously noted, in Chen (supra), the stipulation between the attorneys discontinuing the first owner’s-use holdover proceeding clearly and unambiguously stated that the “petitioner was barred from commencing a new ‘owner’s-use’ holdover proceeding based upon the same predicate notice of lease nonrenewal as used in the prior holdover.”
Here, there was no such specific language and it appears from the conduct of the petitioner’s attorney in commencing new proceedings the very next day, that there was no meeting of the minds regarding the words “without prejudice” as being a bar for the immediate commencement of new proceedings using the same predicate notices from the just terminated proceedings, without having to wait an additional one or two years for a new lease to expire.
*470 Petitioner’s immediate and prompt effort to correct the error of failing to forward a copy of the petitions and notices of petition to NYCHA should not preclude the prosecution of these matters.
In 808 W. End Ave. LLC v Pomeranz (NYLJ, Jan. 10, 2007, at 23, col 1), the court dealt with a dispute as to whether a second holdover proceeding, using the same predicate notice, was brought on the same day the first proceeding was discontinued or the next day. Relying on DiCara v Cecere (supra [where a second predicate notice was not required because the landlord commenced a second proceeding the very next day after the first was discontinued]) and Volstad v Ashley (NYLJ, Nov. 27, 1989, at 26, col 6 [App Term, 1st Dept] [where a second notice was not required since the second proceeding was brought “shortly” after the first proceeding was dismissed]), the court found that under either set of facts the respondent “suffered little prejudice thereby” and denied the motion to dismiss.
As the court in 808 W End Ave. LLC (supra) stated:
“the predicate notice is not ‘[hanging] like a sword of Damocles over the head of the tenant, to be used at some future date, at the whim of the landlord’ At worst, it was used the very next day after the mistake in service was recognized. Respondents suffered little prejudice thereby.” (Citation omitted.)
This court reaches the same conclusion as did the courts in 808 W. End Ave. LLC (supra), DiCara v Cecere (supra) and Volstad v Ashley (supra) with respect to the case at bar.
Regarding the respondents’ second branch of the motions, that the petitioner failed to file completed affidavits of service of the petitions and notices of petition with the clerk of the court, the court finds no merit to support dismissal on that ground. (See petitioner’s aff in opposition, exhibit H.)
Accordingly, the motions to dismiss these proceedings are denied in their entirety.

. (See Golub v Frank, 65 NY2d 900 [1985].) The owner of a rent-stabilized unit must notify the tenant of his or her intent not to renew the lease during the “window period” which is not more than 150 nor fewer than 90 days before the expiration of the lease.

. This case is distinguished from the matter now before the court in that the second proceeding was commenced prior to the discontinuance of the first proceeding. The court discussed the applicability of Arol Dev. Corp. v Goodie Brand Packing Corp. (84 Misc 2d 493 [1975]), where the Appellate Term, First Department, allowed the use of the same predicate notice because it was brought promptly and within a reasonable time after the notice of termination was served. In accord is Hudsonview Waterfall Assoc. IV, LP v MTP 59th St. LLC (NYLJ, Aug. 10, 2005, at 25, col 2 [App Term, 1st Dept]) where the tenant was caused no discernible prejudice.
Since Arol involved commercial premises as opposed to residential premises, many of the cases relied on by the respondents have either distinguished their holdings or made no reference to it at all. Thus, further discussion of Arol in this matter is unwarranted.