Golia, J.
(dissenting and voting to reverse the order and deny tenant’s motion to dismiss the petition, in the following memorandum). Contrary to the majority, I find that the notice of non-renewal, which was predicated upon Rent Stabilization Code (9 NYCRR) § 2524.4 (a) (occupancy by owner or member of owner’s immediate family), included sufficient facts necessary to establish a basis for the nonrenewal of the lease.
*37 More specifically, the notice contains the actual name of the family member who is going to occupy the premises as his primary residence as well as his relationship to the owner (see Whang v Wald, NYLJ, Apr. 3, 1990, at 29 [App Term, 2d & 11th Jud Dists 1990]). The reliance by the majority on the case of Berkeley Assoc. Co. v Camlakides (173 AD2d 193 [1991], affd 78 NY2d 1098 [1991]) is misplaced because that case dealt with the section of the Rent Stabilization Code concerning a tenant’s alleged failure to maintain the premises as his primary residence, whereas the case at bar deals with the section concerning the right to obtain the apartment by an owner for himself or his immediate family.
There is an important distinction between these two sections of the Rent Stabilization Code. In cases involving an owner’s obtaining possession of an apartment on the grounds of nonprimary residence, the question presented is whether or not the current tenant is maintaining the subject apartment as his primary residence. If he is not using it as his primary residence, he loses the protection of the Rent Stabilization Law. Such cases deal entirely with the facts and circumstances of the tenant’s living situation and have nothing to do with the owner, his family members or their living situation. That is why a claim of use as a nonprimary residence must be fact specific and may involve the legal ramifications of a tenant’s lifestyle choices, such as spending every winter in another state with a warmer climate; spending time caring for a sick friend or relative; staying for an extended period with a friend; allowing other people to live in the apartment in tenant’s absence; as well as any number of other life situations.
However, in an “owner occupancy” situation such as this, the sole issue is whether or not the owner, or his immediate family, actually intends to occupy the subject premises as his primary residence. The living situation of the present tenant is completely irrelevant and therefore any facts concerning the tenant’s living situation are of no concern. In addition, there is no requirement that the owner or his family member need the apartment for any specific reason or for that matter that they “need” the apartment at all.
In rare instances, the needs and factual circumstances of the owner’s living situation can be important. An example of such a rare situation arose in the case of Pultz v Economakis (10 NY3d 542 [2008]). In that case, the owner sought “owner occupancy” *38 of an entire 15-unit apartment building to be used as the primary residence of him and his immediate family. This was a unique case, and based upon the extensive factual assertions concerning family needs and detailed construction plans, the Appellate Division and the Court of Appeals rejected the tenant’s claim that the owner was actually seeking to utilize the expediency of this section to simply take the entire building out of the rent stabilization rolls.
It is only under such unique circumstances that a simple statement of intent is insufficient. This is entirely understandable inasmuch as a notice stating that the owner intends to occupy a single apartment as his primary residence is a perfectly reasonable and believable concept. Indeed, a notice stating that the owner intends to occupy 15 apartments as his primary residence is suspect on its face, and therefore must include additional factual information in order for that statement to appear truthful and reasonable.
Nevertheless, the only requirement for obtaining the use of the apartment is that the owner intends to occupy the apartment as his primary residence. In this regard, the notice in question states:
“Please Take Notice, that your tenancy ... is hereby terminated . . . the owners of the building . . . will not be renewing your current lease ... on the grounds that one of the Landlord/Owners, seeks to recover possession . . . for the personal use and occupancy ... by a member of the Landlord/ Owner’s immediate family as their primary residence . . . Specifically ... (a) Fred Giancola is one of the Landlord/Owners ...(b) Fred Giancola seeks, in good faith, to recover the premises ... so it can be occupied by his son, David Giancola, who is a member of his immediate family” (emphasis added).
Under these simple circumstances, I do not see any reason why any further factual information is necessary. Clearly, section 2524.4 (a) (5) provides for certain punishment or forfeiture in the event the proposed occupant fails to occupy the premises or to continue in occupancy as his primary residence for at least three years. Furthermore, it is abundantly clear that this provision was included to prevent any intentional abuse by an owner. Indeed, this section provides that “This paragraph shall not eliminate or create any claim that the former tenant of the *39 housing accommodation may or may not have against the owner.” (9 NYCRR 2524.4 [a] [5].)
Rios, J.E, and Pesce, J., concur; Golia, J., dissents in a separate memorandum.